**RYAN, KLIMEK, RYAN PARTNERSHIP, Maury A. Ryan, James Hillary Ryan and Stanley Klimek, Plaintiffs,**

v.

**ROYAL INSURANCE COMPANY OF AMERICA, Defendant.**

Civ. A. No. 88–0255L.

United States District Court,
D. Rhode Island.

Sept. 23, 1988.

Maury A. Ryan, Asquith, Merolla, Anderson, Ryan & Wiley, Providence, R.I., for plaintiffs.

Kenneth P. Borden, Higgins, Cavanagh & Cooney, Providence, R.I., for defendant.

### MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is presently before the Court on defendant Royal Insurance Company's motion to dismiss or transfer plaintiffs' action. Dismissal is sought under the doctrine of *forum non conveniens*. In the alternative, defendant desires a transfer of the case to the United States District Court for the Western District of New York pursuant to the federal change of venue stat-

ute, 28 U.S.C. § 1404(a).[1] In this suit, plaintiffs contend that Royal Insurance Company ("Royal") has not complied with provisions of several insurance contracts written on plaintiffs' Rochester, New York property. Plaintiffs seek rescission of a loss settlement and also compensatory and punitive damages.

The legal rules concerning *forum non conveniens* and § 1404(a) transfers are well established. The resolution of this matter, therefore, merely involves the proper application of these rules to the relevant facts of the instant case. This Court concludes that plaintiffs' action should not be dismissed or transferred and, therefore, denies Royal's motion.

### Background

Ryan, Klimek, Ryan Partnership ("the Partnership") is a partnership formed under the laws of New York and presently having its only situs in Providence, Rhode Island. The individual plaintiffs, Maury Ryan, James Ryan, and Stanley Klimek comprise the entire membership of the Partnership. Prior to the winter of 1987–1988, the Partnership owned a factory building and industrial lot located in Rochester, New York. The Partnership leased these premises to Stuart–Oliver–Holtz Inc. ("Stuart–Oliver–Holz"), a New York corporation owned by Maury Ryan and Stanley Klimek.

For periods during the 1970's and 1980's, Royal insured plaintiffs' Rochester facilities under several "Business Comprehensive Insurance" policies. Plaintiffs claim such coverage ran from at least October of 1974 to March of 1976, from September of 1981 to August of 1984, and from September of 1984 to September of 1987. The Partnership and Stuart–Oliver–Holtz were the named insureds.

On December 20, 1974 a fire damaged plaintiffs' premises. At the time of the blaze, Royal was allegedly aware that plaintiffs' building regularly contained the industrial chemical trichloroethylene.

Plaintiffs further allege that unbeknownst to them, trichloroethylene, released by the fire, polluted the industrial site. Royal's agent, General Adjustment Bureau, investigated the loss and plaintiffs received indemnification for property damage. Plaintiffs accepted Royal's claim settlement on or about January 24, 1975.

In early 1987, plaintiffs sought to sell their Rochester property. Therefore, plaintiffs commissioned the Fairport, New York firm of Lozier Architects/Engineers ("Lozier") to conduct an environmental study of the site. On February 28, 1987, Lozier issued a report which disclosed the presence of trichloroethylene in the groundwater on plaintiffs' property. The level of trichloroethylene was in excess of that acceptable under the relevant federal guidelines. As required by law, plaintiffs submitted the environmental report to the New York State Department of Environmental Conservation ("DEC"). On April 7, 1987, the DEC ordered that the property be cleaned up.

Since it had declared bankruptcy on December 2, 1986, Stuart–Oliver–Holtz was financially incapable of purifying the polluted site. Due to the presence of hazardous waste and the DEC order, plaintiffs allege that the property's market value plunged by approximately $1,100,000. Therefore, in the Spring of 1987, plaintiffs sought a means of removing the toxic waste before selling their real estate.

In the hope that Royal would clean up their polluted groundwater or pay for it, plaintiffs repeatedly notified the insurance company of the hazardous waste contamination and anticipated loss of $1,100,000. Royal denied liability and cancelled plaintiffs' coverage as of July 13, 1987. In late November of 1987, plaintiffs finally sold their contaminated property for $980,000. With its real estate sold and its principal tenant out of business, the Partnership found itself without a New York presence and its records were transferred to Maury

---

1. 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Ryan's law offices in Providence, Rhode Island.

Plaintiffs, sometimes pleading in the alternative, have brought a five count complaint against defendant. Some of these counts are at least partially repetitive. In Count I, plaintiffs maintain that Royal wrongfully and in bad faith refused to defend plaintiffs before the DEC or to offer to reimburse them for the costs associated with cleaning up the contaminated groundwater. In Count II, plaintiffs claim that Royal breached its duty of good faith, failed to protect plaintiffs' interests, misled them as to its investigation of the 1974 loss, and acted in bad faith in cancelling their insurance coverage. In Count III, plaintiffs claim that Royal, fraudulently or negligently, misled plaintiffs as to the presence of hazardous waste in the groundwater at the time of the 1974 fire loss settlement. In Count IV, plaintiffs claim that a mutual mistake of fact existed at the time of the 1974 settlement as to the presence of hazardous material in the groundwater. Finally, in Count V, plaintiffs claim that Royal, as an expert in dealing with hazardous materials and fire losses, wrongfully failed to notify plaintiffs of the existence of hazardous material and to clean up this toxic material, and wrongfully cancelled plaintiffs' insurance coverage; thus forcing plaintiffs to sell their property at a loss.

Plaintiffs seek rescission of the 1974 settlement, $1,120,000 in actual damages, and $5,000,000 in punitive damages.

Royal filed a motion seeking dismissal on the grounds of *forum non conveniens,* or, in the alternative, for transfer of venue pursuant to 28 U.S.C. § 1404(a). On August 19, 1988, this Court heard oral argument on the motion, and took the matter under advisement. It is now in order for decision.

## DISCUSSION

Analyses of motions made pursuant to the common law doctrine of *forum non conveniens* and the federal transfer of venue statute, 28 U.S.C. § 1404(a), involve the consideration of very similar factors. Yet, a significant difference exists with regard to the burden a party moving for dismissal or transfer must meet in order to prevail. J. Friedenthal, M. Kane, A. Miller, *Civil Procedure,* p. 90–91 (1985). The Supreme Court recently compared *forum non conveniens* and § 1404(a) and observed:

> Congress enacted § 1404(a) to permit change of venue between federal courts. Although the statute was drafted in accordance with the doctrine of *forum non conveniens,* it was intended to be a revision rather than a codification of the common law. District courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens.*

*Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253, 102 S.Ct. 252, 264–65, 70 L.Ed.2d 419 (1981) (citations omitted). "Nonetheless, *forum non conveniens* considerations are helpful in deciding a § 1404 transfer motion." *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986). Therefore, any determinations made under the doctrine of *forum non conveniens* and § 1404(a) must, by necessity, rely on many of the same factors. Clearly, § 1404(a) provides a more lenient standard for a court attempting to decide whether to transfer as compared to when the only issue is whether to dismiss.

This opinion will analyze the facts in the instant case using the applicable *forum non conveniens* /§ 1404(a) factors. Since the facts of this action do not justify transfer under the more lenient § 1404(a) standard, the motion to dismiss on the grounds of *forum non conveniens* obviously also fails.

In *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and its companion case *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), the Supreme Court clearly set forth a list of private and public interest factors which should be considered in making a *forum non conveniens* determination. More recently, the Supreme Court reaffirmed the *Gilbert* test and discussed the importance of a plaintiff's choice of forum in § 1404(a) rulings in *Piper Aircraft Co. v. Reyno, supra.*

■ Turning first to the plaintiff's choice of forum factor, the Supreme Court has held "that there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." 454 U.S. at 255, 102 S.Ct. at 265–66. However, this strong presumption is greatly weakened where plaintiff's chosen forum is not also his home. 454 U.S. 255–56, 102 S.Ct. at 265–66.

■ Royal argues that plaintiffs' chosen forum, the District of Rhode Island, is not plaintiffs' home and therefore the Court should accord little weight to plaintiffs' choice. This argument has little vitality. The present action is a suit by the remnant of a real estate partnership, whose records are now located in Rhode Island. Of its three component partners, one resides in Rhode Island. In fact, the three partners reside in three different federal districts and this action must necessarily be brought in a forum which is home to only one partner. *See Triple A Partnership v. MPL Communications, Inc.*, 629 F.Supp. 1520, 1526 (D.Kan.1986). For purposes of § 1404(a) analysis, it is reasonable to conclude that where a partnership is a plaintiff in a civil action and its partners are residents of different federal districts, the home of any partner may properly be considered to be the home district of the partnership; absent a strong showing to the contrary or evidence of improper manipulation in forum selection. Since partner Maury Ryan is a Rhode Island resident and has custody of the Partnership records, Rhode Island may properly be considered the home district of the Partnership for purposes of this case.

Royal has presented no evidence from which this Court can infer that plaintiffs chose this forum for an improper or sinister purpose. To the contrary, it is clear that plaintiffs chose to bring suit in this Court merely for their own convenience. Since partner Maury Ryan, the Rhode Island resident, is representing himself and the other plaintiffs, it seems natural that he would bring suit in his home state. The great weight accorded a plaintiff's choice of his home forum stems in large part from the assumption that this choice is motivated merely by convenience. *Id.* 454 U.S. at 256, 102 S.Ct. at 266. That is obviously the case here and, consequently, transfer would only be proper if Royal can make a strong showing of inconvenience to itself under the *Gilbert/Piper Aircraft* analysis.

In *Piper Aircraft* the Supreme Court listed private and public interest factors which should be considered in evaluating the propriety of retaining an action in a particular forum.

The factors pertaining to the private interests of the litigants include[] the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert,* 330 U.S. at 508 [67 S.Ct. at 843]. The public factors bearing on the question include[] the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.,* at 509 [67 S.Ct. at 843].

454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6. The Court also held that "when trial in the chosen forum would 'establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case." 454 U.S. at 241, 102 S.Ct. at 258 (citing *Koster,* 330 U.S. at 524), 67 S.Ct. at 831–32.

After applying the private interest factors listed in *Gilbert,* this Court is not convinced that defending this action in the District of Rhode Island would be so oppressive to Royal that transfer is justified under § 1404(a). In fact, this Court is not persuaded that defending this action in this District is even less convenient—let alone oppressive—for Royal.

Defending plaintiffs' action in this Court, as compared to defending it in Rochester, New York, will not be unduly burdensome for Royal for several reasons. First, Royal is an Illinois corporation having its principal place of business in North Carolina. Rochester is not significantly closer to North Carolina than is Providence, Rhode Island. Moreover, Royal maintains an office in East Providence, Rhode Island, conveniently located with respect to the United States' Courthouse in downtown Providence.

Secondly, the location of Royal's relevant records and witnesses weighs in favor of a finding that this forum is not excessively inconvenient. During oral argument plaintiffs' counsel indicated that the 1974 fire loss claim was handled through Royal's New York City office and directly from its North Carolina home office. Furthermore, plaintiffs' counsel stated that Royal's records regarding the 1974 investigation are most likely kept in New York City or North Carolina. Royal's counsel did not contradict these assertions. According to the parties, if this action were transferred to the Western District of New York, the case would be tried in Rochester, New York (and not at the United States Courthouse in Buffalo). Rochester, New York is 318 miles from New York City, whereas Providence, Rhode Island is only 170 miles from New York City. It appears likely that Royal's key witnesses are located closer to Providence, Rhode Island than to Rochester, New York, thus the District of Rhode Island is not an inconvenient forum. Moreover, Royal is free to depose any witnesses still located in the Rochester, New York area.

Thirdly, the location of plaintiffs' documents and witnesses makes this forum a reasonable, if not the only reasonable, venue. All of the Partnership's records are maintained in Providence. Of the three partners comprising the partnership, one resides in Providence, one resides in New York City, and the third resides in Rochester. Plaintiffs are willing to bring their New York witnesses to Providence for trial purposes. While this Court is certainly not the only plausible forum for this suit, plaintiffs have made their choice and it is not improper.

Finally, this Court is not convinced that a view of the premises in Rochester, New York will be necessary, or even helpful, in resolving this case. In the first place, since plaintiffs have sold their contaminated facility, viewing access is uncertain. Second, the alleged pollution is underground, so a view of the surface would be pointless. Most importantly, according to plaintiffs, photographs of the Rochester facility are in existence and may be used at trial if necessary.

Application of the public interest factors listed in *Gilbert* and *Piper Aircraft,* dictate that transfer under § 1404(a) is unjustified. This Court's calendar is current and sufficient local interest exists in compensating a Rhode Island partner allegedly injured by the acts of an insurer to justify holding trial in Rhode Island. Moreover, this Court is confident that it can properly apply the relevant insurance law which is applicable to this diversity case.

### CONCLUSION

In summary, this case boils down to an action by a three-member partnership against an Illinois insurance company headquartered in North Carolina, over a claim for damages to Rochester, New York real property which plaintiffs no longer own. Since one of the partners, an attorney who will be prosecuting the action, is a Rhode Island resident and practioner, plaintiffs filed suit in the District of Rhode Island. Clearly the convenience of this forum has motivated plaintiffs to choose this District. On the other hand, it is unclear what motivated Royal to file its § 1404(a) motion to transfer this case to Rochester, New York.

The United States court in Providence seems to be at least as convenient for Royal's defense as the Rochester court. In fact, defendant's New York City office, which apparently handled the 1974 claim, is 148 miles closer to Providence than to Rochester. Thus, it appears that the only added *convenience* that Royal seeks to gain through a transfer to the Western District of New York is the *inconvenience* it will cause plaintiffs to try the case there.

In any event, this Court concludes that under the *Gilbert/Piper Aircraft* test, no justification has been shown by Royal for upsetting plaintiffs' choice of forum. Therefore, defendant's § 1404(a) motion for transfer is denied. As discussed herein, a party seeking dismissal on the grounds of *forum non conveniens* is held to a stricter standard than one seeking transfer under § 1404(a). Since the facts of this case do not justify transfer under the more lenient § 1404(a) test, Royal's motion to dismiss under the doctrine of *forum non conveniens* likewise is denied.

IT IS SO ORDERED.