**Maurice C. PARADIS, Receiver of American Universal Insurance Co., Plaintiff,**

v.

**Marshal W. DOOLEY, Jarrell B. Ormand, and Dooley, Rucker, Maris & Foxman, Defendants.**

Civ. A. No. 90–0557L.

United States District Court, D. Rhode Island.

Oct. 11, 1991.

Allen P. Rubine, Winograd, Shine & Zacks, Inc., Providence, R.I., for plaintiff.

William A. Curran, Hanson, Curran, Parks & Whitman, Providence, R.I., William D. Cobb, Jr., Cowles & Thompson, Dallas, Tex., for defendants.

MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is presently before the Court on defendants' motion to transfer the case

to the United States District Court for the Northern District of Texas pursuant to the federal change-of-venue statute, 28 U.S.C. § 1404(a).

American Universal Insurance Company ("AUIC") is a Rhode Island corporation presently in receivership and represented in this action by its receiver, Maurice C. Paradis. On November 7, 1990, AUIC filed suit against defendants Marshal W. Dooley ("Dooley"), Jarrell B. Ormand ("Ormand"), and the law firm of Dooley, Rucker, Maris & Foxman ("the law firm"). Dooley and Ormand are partners in the law firm, which is located in Dallas, Texas. Plaintiff alleges legal malpractice and breach of fiduciary duty by defendants in connection with their legal representation of AUIC in three specific transactions. Jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1332. For the following reasons the Court denies defendants' motion for change of venue.

## I. BACKGROUND

The relationship between the parties began in May of 1988 when Resolute Holdings, Inc. ("RHI"), a corporation represented by defendants and owned in part by Texas businessman Charles S. Christopher ("Christopher"), bought AUIC. Thereupon, Christopher began serving as president and chief executive officer of AUIC, and in that capacity retained defendants as legal counsel to AUIC in connection with its real estate investment transactions. Dooley served on the AUIC board of directors with Christopher, and both Dooley and Ormand were present at the board meetings when the transactions in question were discussed and approved. Furthermore, Ormand frequently traveled to Rhode Island to render legal advice and assistance to AUIC with respect to the subject transactions. The facts of the three transactions are given here as they have been alleged by plaintiff.

The first transaction concerned AUIC's purchase of Christopher's personal residence in Dallas, Texas for $1.7 million. Although Christopher was a Chapter 11 bankruptcy debtor at the time, defendants failed to obtain approval from the bank-ruptcy court prior to the sale as required by federal bankruptcy law, 11 U.S.C. § 363. Defendants also failed to obtain a release of liens on the property before turning over the $1.7 million to Christopher. Furthermore, the transaction was not in accordance with AUIC's employee relocation program.

The second transaction concerned AUIC's loan of $5.4 million to Mydar Business Group, Inc. ("Mydar"), a Minnesota corporation of which Christopher's brother Tom was president. Mydar owed RHI the sum of $3 million on a promissory note secured by real estate in Big Springs, Texas. With the assistance of defendants Ormand and the law firm, Christopher arranged for AUIC to loan Mydar the $5.4 million on a nonrecourse basis to enable Mydar to repay the $3 million and to allow RHI to acquire some ready cash. The $5.4 million loan was secured by the same real estate in Big Springs, Texas used to secure Mydar's $3 million promissory note. Plaintiff alleges that defendants failed to advise AUIC, its management, and its board that the loan to Mydar was not on commercially reasonable terms or that the real estate, appraised on an "as developed" basis, was undeveloped and worth only about $300,-000.

The third transaction concerned AUIC's purchase of certain defaulted promissory notes of Fiberflex Products Ltd. ("Fiberflex"), a company in Chapter 11 bankruptcy proceedings, from First Republic Bank of Midland, Texas for $3.4 million. Christopher, also in Chapter 11 bankruptcy at the time, had been the chief executive officer of Fiberflex until his ouster by its majority shareholder. According to plaintiff, the intended effect of this transaction was to resolve Christopher's personal bankruptcy by giving his creditors an equity interest in a new corporation, Tri–Texas, Inc. Furthermore, AUIC's purchase of the notes, which represented the largest unsecured claim in Christopher's bankruptcy estate, extinguished his personal guarantee on them. Plaintiff alleges that defendants Ormand and the law firm failed to advise AUIC, its management, and its board that

the Fiberflex assets securing the notes were worth far less than the $3.4 million paid for them, and that the transaction was intended to benefit Christopher's financial situation at AUIC's expense.

The parties now disagree on where this matter should be litigated. Defendants assert that the proper forum is the Northern District of Texas, where they prepared the legal documentation for the three transactions and where they were under a duty of loyalty and a duty of care pursuant to Texas law. Plaintiff contends, however, that the matter should be litigated in Rhode Island, where the alleged legal malpractice and breach of fiduciary duty occurred when defendants, serving as legal counsel to AUIC, failed to deliver competent legal advice and assistance as required by Rhode Island law.

After having heard arguments on the motion for change of venue, the Court took the matter under advisement. The motion is now in order for decision.

## II. DISCUSSION

Plaintiff brought this claim in Rhode Island pursuant to the federal venue statute, 28 U.S.C. § 1391(a) (1988), which states:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

AUIC is a Rhode Island corporation with its principal place of business in Providence, Rhode Island. Therefore, Rhode Island is an appropriate forum. Defendants argue, however, that the Court should consider the recent amendment to § 1391(a), enacted on December 1, 1990, which provides the following forum choices in a diversity action:

(1) a judicial district where any defendant resides, if all defendants reside in the same State,

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

(3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced.

Judicial Improvements Act of 1990, Pub.L. No. 101–650, Title I, § 311, 104 Stat. 5114 (December 1, 1990) (codified at 28 U.S.C.A. § 1391(a) (West Supp.1991)).

■ Congress failed to enact a special effective-date provision with this amendment. Therefore, the Court concludes that the amendment became effective as of its date of enactment, December 1, 1990. *See* 28 U.S.C.A. § 1391 commentary (West Supp.1991) (addressing effective date of amendment). Defendants contend, however, that the amendment is applicable to this action, which was filed on November 7, 1990, prior to enactment of the amendment. Because the amendment eliminates the option of bringing suit in the district in which plaintiff resides, defendants argue that Rhode Island is not an appropriate venue choice. The Court finds this argument to be without merit. The issue of where to bring an action is determined when the action is commenced, which in this case was November 7, 1990. Therefore, the Court concludes that the December 1, 1990 amendment is not germane to this matter.

■ Even if the amendment had been in effect on November 7, 1990, plaintiff would not have been precluded from bringing suit in Rhode Island. Plaintiff's claim is based upon alleged misrepresentations that occurred in Rhode Island, "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C.A. § 1391(a)(2) (West Supp.1991). Furthermore, defendants do not dispute that they are subject to personal jurisdiction in Rhode Island, thereby satisfying § 1391(a)(3), as amended. Therefore, under § 1391(a) as it read when plaintiff filed suit or § 1391(a) as amended thereafter, Rhode Island is clearly an appropriate forum in which to litigate this matter.

Having concluded that the matter was properly brought in this venue, the Court must determine whether a transfer to the Northern District of Texas is in order.

There are several considerations that assist a court in determining whether to transfer an action. Section 1404(a) states:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

■ There is no question that plaintiff could have commenced this action in the Northern District of Texas, where defendants reside. Therefore, transfer may be appropriate if defendants can establish that the balance of convenience weighs in their favor. "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Furthermore, "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981). As the United States Supreme Court explained in *Piper Aircraft:*

> The factors pertaining to the private interests of the litigants include[ ] the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert*, 330 U.S., at 508 [67 S.Ct. at 843]. The public factors bearing on the question include[ ] the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an un-

related forum with jury duty. *Id.*, at 509 [67 S.Ct. at 843].

454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6. Although the *Gilbert Piper Aircraft* analysis was formulated to address the issue of *forum non conveniens*, the same factors apply when a court is deciding a motion to transfer. *Ryan, Klimek, Ryan Partnership v. Royal Ins. Co. of America*, 695 F.Supp. 644, 646 (D.R.I.1988).

■ Examining these factors, the Court finds that defendants have failed to meet their burden. First, the private factors weigh neither for nor against transfer. AUIC is a Rhode Island corporation and all its corporate records and documents relating to the subject transactions are located in Providence, Rhode Island. Defendants are Texas lawyers and all their pertinent records and documents are located in Dallas, Texas. Therefore, either party would be equally inconvenienced by having to travel to a foreign district to litigate this matter. *Levinger v. Matthew Stuart & Co.*, 676 F.Supp. 437, 441 (D.R.I.1988). Furthermore, defendants' witnesses reside in or near the Northern District of Texas, whereas plaintiff's witnesses reside in Rhode Island, Maryland, and California. Therefore, the witnesses for either side would be equally inconvenienced if they were called to testify in a foreign district. *Id.*

Second, a consideration of the public factors reveals that Rhode Island is the more appropriate forum. The complaint arose from defendants' conduct while serving as legal counsel to AUIC in Rhode Island. Rhode Island, therefore, has a strong public interest in seeing that a complaint by a resident corporation against foreign legal counsel is adequately resolved. *Id.* at 441–42. Rhode Island also has a vested interest in how state law in the areas of legal malpractice and breach of fiduciary duty is determined by a federal court. Choice of law is not a controlling factor in deciding this motion because a transferee court would apply the same state law that the transferor court would have applied. *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d

945 (1964). Nevertheless, it is advantageous to have the lawsuit adjudicated by a federal district court in Rhode Island that is more familiar with Rhode Island law than a federal district court in Texas would be. *Id.* at 645, 84 S.Ct. at 824.

Finally, the Court finds that there are no administrative reasons to transfer the matter. The Court's calendar is current and sufficient local interest exists to justify holding trial in Rhode Island. *Ryan, Klimek, Ryan Partnership*, 695 F.Supp. at 648.

### III. CONCLUSION AND ORDER

The Court acknowledges that defendants may be inconvenienced by having to litigate this matter in Rhode Island. Nevertheless, the Court finds that the balance of convenience does not strongly favor defendants. Accordingly, defendants' motion for change of venue is hereby denied.

It is so ordered.