**BRIAN JACKSON & COMPANY, Plaintiff,**

v.

**EXIMIAS PHARMACEUTICAL CORP. f/k/a Zarix, Inc., Defendant.**

**C.A. No. 02–477S.**

United States District Court, D. Rhode Island.

Feb. 25, 2003.

---

Christopher C. Whitney, Little, Bulman, Medeiros & Whitney, PC, Providence, RI, for Plaintiff.

Jeffrey S. Michaelson, Michaelson & Michaelson, North Kingstown, RI, Michael R. Gottfried, Patricia Rich Ray, Duane Morris, LLP, Boston, MA, for Defendant.

### DECISION AND ORDER

SMITH, District Judge.

This matter is before the Court on a Motion to Dismiss by the Defendant, Eximias Pharmaceutical Corporation ("Eximias" or "Defendant") for lack of personal jurisdiction, improper venue and/or *forum non conveniens*. In the alternative, Eximias urges this Court to transfer this case to the U.S. District Court for the Eastern District of Pennsylvania. The Plaintiff, Brian Jackson & Company ("Plaintiff" or "Jackson"), objects, claiming this Court has personal jurisdiction over Eximias. This Court heard oral argument on this motion on January 24, 2003. For the reasons set forth below, the Defendant's motion is denied.

*Background*

Brian Jackson and his eponymous company performed consulting services, pursuant to an agreement, for Eximias Pharmaceutical Corporation, a start-up pharmaceutical company that owns various drug technologies.[1] The agreement provides that if Eximias contracts with a company with which Jackson made initial contact, within 12 months of Jackson's termination, Jackson is entitled to 10% of the up-front payment to Eximias plus 2% of additional "milestone" payments.

Jackson alleges that Eximias has come to an agreement with LGCI, a South Korean company. Jackson claims that he initi-

---

1. Jackson is a Rhode Island resident and his business is a Rhode Island corporation. Eximias is a Delaware corporation and its principal place of business is in Pennsylvania.

ated contact with LGCI and conducted the negotiations that led to LGCI submitting a "term sheet." Jackson seeks a preliminary injunction placing a constructive trust on all monies that Eximias received and/or will receive from LGCI, the compensation to which he believes he is entitled, as well as other relief.

Eximias has moved to dismiss Jackson's complaint for lack of personal jurisdiction, improper venue, and/or *forum non conveniens;* in the alternative, Eximias seeks to have this case transferred to the United States District Court for the Eastern District of Pennsylvania. Eximias alleges that Rhode Island does not have personal jurisdiction over it because Eximias (1) does not conduct business in Rhode Island, (2) does not have an office in Rhode Island, and (3) does not have employees or agents in Rhode Island. Eximias also asserts that all correspondence between the parties relating to the alleged breach of the contract—i.e. the termination of Jackson's business relationship—was sent to and from Boston and Pennsylvania exclusively.

Jackson believes that this Court has jurisdiction over this case. While Jackson did use a Boston business address, effectively a "mail drop," he argues that Eximias knew well that he lived and worked in Rhode Island (and, indeed, he claims that Eximias actively encouraged him to perform his work for Eximias in Rhode Island as a cost-saving measure). To prove his point, Jackson relies on numerous communications between the parties that occurred while Jackson worked at his home office in East Greenwich, Rhode Island.

*Analysis*

### 1. *In Personam Jurisdiction*

The burden of establishing *in personam* jurisdiction over the defendant rests on the plaintiff. *Sawtelle v. Farrell,* 70 F.3d 1381, 1387 (1st Cir.1995); *Donatelli v. Nat'l. Hockey League,* 893 F.2d 459, 463 (1st Cir.1990). It is well settled in this Circuit that courts use the *prima facie* standard to determine whether personal jurisdiction is appropriate. *Rodriguez v. Fullerton Tires Corp.,* 115 F.3d 81, 83 (1st Cir.1997). Under the *prima facie* standard, plaintiff "must make the showing as to every fact required to satisfy both the forum's long-arm statute and the due process clause of the Constitution." *Boit v. Gar–Tec Prods., Inc.,* 967 F.2d 671, 675 (1st Cir.1992). The Court accepts the plaintiff's properly documented evidentiary proffers as true for purposes of determining the adequacy of the *prima facie* showing. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 51 (1st Cir.2002); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir.1998) (taking as true, whether or not disputed, the facts as set forth by the plaintiff and construing them in the light most congenial to the plaintiff's jurisdictional claim).

To establish personal jurisdiction, a plaintiff must show that (1) the forum state has a long-arm statute that purports to grant jurisdiction over the defendant[2] and (2) exercising jurisdiction comports with the due process requirements of the Fourteenth Amendment to the U.S. Constitution. *Sawtelle,* 70 F.3d at 1387. Since Rhode Island's long-arm statute claims

---

**2.** The Rhode Island long arm statute provides: Every foreign corporation, every individual not a resident of this state ... and every partnership or association, composed of any person or persons, not such residents, that shall have the necessary minimum con- tacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island ... in every case not contrary to the provisions of the constitution or laws of the United States. R.I. Gen. Laws § 9–5–33.

jurisdiction to the maximum extent permitted by the Fourteenth Amendment, *see Almeida v. Radovsky*, 506 A.2d 1373, 1374 (R.I.1986), the question becomes whether asserting personal jurisdiction over Eximias is consistent with the Due Process Clause.

There are two types of personal jurisdiction, general and specific. *See Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir.1994). Jackson claims the existence only of specific jurisdiction. *See* Plaintiff's Memorandum of Law in Support of Its Objection to Defendant's Motion to Dismiss ("Plaintiff's Memorandum"), p. 8.

■ Specific jurisdiction exists if the following factors are present:

First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Sawtelle*, 70 F.3d at 1389 (citing *United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir.1992)); *see Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 712–13 (1st Cir.1996) (citing *Pritzker*, 42 F.3d at 60–61).

■ As dictated by this tripartite formula, the Court turns first to the "relatedness" requirement. "[T]he [relatedness] requirement focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir. 1994). The relatedness requirement is satisfied if "the claim underlying the litigation ... directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." *Daynard*, 290 F.3d at 61.

■ In the present case, the parties clearly contemplated that Jackson would be working and performing his contractual duties in Rhode Island, and also contemplated "ongoing interaction between" Jackson in Rhode Island and Eximias in Pennsylvania. *See id.* Furthermore, the agreement was negotiated and formed, at least on Jackson's end, in Rhode Island.[3] Just as in *Daynard*, the core allegations in Jackson's suit arise, for the most part, out of these Rhode Island activities.

■ Next, the Court turns to the "purposeful availment" factor. The purposeful availment test focuses on the deliberateness of the defendant's contacts. *Ticketmaster–New York*, 26 F.3d at 207. The requirement of "purposeful availment" necessitates a voluntary decision by the de-

---

3. While the parties agree that the actual termination letter was sent by Eximias to Jackson at his business address in Boston, Jackson's Boston address was little more than a mail drop. At oral argument on January 24, 2003, counsel for Eximias repeatedly urged the court not to find personal jurisdiction in Rhode Island based on the equitable doctrine of estoppel. Jackson's use of a Boston business address, counsel argued, should estop him from claiming that Rhode Island is the proper jurisdiction for this case.

Personal jurisdiction, however, has little to do with assessing the equitable subtleties of Jackson's activities. Rather, personal jurisdiction involves the power of this Court to compel Eximias to abide by its decrees. *See Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 143 (1st Cir.1995) ("[p]ersonal jurisdiction implicates the power of a court over a defendant"); *see also Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 n. 2 (1st Cir.1999) ("[j]urisdictionally speaking, each defendant must stand or fall based on its own contacts with the forum"). Consequently, this Court's focus must be on Eximias and its contacts with Rhode Island.

fendant to inject itself into the local economy as a market participant. *Microfibres v. McDevitt–Askew*, 20 F.Supp.2d 316, 321 (D.R.I.1998); *see Northeastern Land Services, Ltd. v. Schulke*, 988 F.Supp. 54, 58 (D.R.I.1997) (citing *Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.*, 764 F.2d 928, 933 (1st Cir.1985)). "The cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability." *Sawtelle*, 70 F.3d at 1391 (citing *Ticketmaster–New York*, 26 F.3d at 207). Plaintiff here presents considerable evidence that Eximias' representatives frequently corresponded with him in Rhode Island by e-mail, facsimile transmission, and telephone. Some of these communications were initiated by Jackson; others were initiated by Eximias; all were voluntary. *See Ticketmaster–New York*, 26 F.3d at 208 ("when the source takes the initiative and causes foreseeable injury, jurisdiction may lie"). While Jackson was an independent business operator, Eximias provided him with his own business card, on which Plaintiff was listed as a "Vice President" of Eximias, in an effort to use his credentials to bolster its executive lineup. Jackson's name and Rhode Island home and cellular telephone numbers were listed on Eximias' Inter–Office Telephone List.[4] Furthermore, Plaintiff alleges, and has provided affidavit testimony to the effect that, Eximias urged Jackson to conduct business out of his office in Rhode Island, rather than travel to Pennsylvania, as a cost-saving measure. Eximias might well have anticipated that encouraging Jackson to perform his contractual duties in Rhode Island substantially increased its

ties to Rhode Island.[5] As the First Circuit stated in *Daynard:*

> Even in cases where the defendant was not physically present in the forum, where the defendant initiated the transaction by mailing or calling the plaintiff in the forum and when the defendant contemplated that the plaintiff would render services in the forum ... many courts have found jurisdiction.

*See Daynard*, 290 F.3d at 62 (citation omitted).

In this progressively globalized economic era of Internet and electronic business communication, it is increasingly common for businesses to employ individuals, such as Jackson, at remote or off-site locations. The principle first enunciated in *Hanson v. Denckla*, 357 U.S. 235, 250–51, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), is as apt today as it was over 40 years ago: "[a]s technological progress has increased the flow of commerce between the states, the need for jurisdiction over nonresidents has undergone a similar increase." In more recent years, commentators and courts have recognized the potential impact of "telecommuting" on jurisdictional as well as other legal concepts. *See generally* David D. Tyler, *Personal Jurisdiction Via E–Mail: Has Personal Jurisdiction Changed in the Wake of Compuserve, Inc. v. Patterson?*, 51 Ark. L.Rev. 429, 429–30 (1998); Joan T.A. Gabel, Nancy Mansfield, *On the Increasing Presence of Remote Employees: An Analysis of the Internet's Impact on Employment Law as it Relates to Teleworkers*, 2001 J. Tech. L. & Pol'y 233, 233–34 (2001).

**4.** Defendant points out that the business card lists the company's home office in Pennsylvania and the phone list contains a company extension. However, the company knew and fully accepted and encouraged Plaintiff's performance of his job in Rhode Island primarily to keep costs down, while presenting him to the outside world as an Eximias employee.

**5.** Given this allegation, it is disingenuous for Eximias to claim, as it does at page 10 of its memorandum of law in support of its motion to dismiss ("Defendant's Memorandum"), that being haled into court was not foreseeable because Jackson "listed his business address" in Massachusetts.

Courts in this and other circuits have recognized (increasingly so in recent years) that Internet-based contacts, such as e-mail communications, particularly when coupled with other more traditional contacts, offer compelling grounds for the assertion of personal jurisdiction over a non-resident defendant. *See, e.g., Back Bay Farm, LLC v. Collucio*, 230 F.Supp.2d 176, 184 (D.Mass.2002) (operation of Internet site is a factor to be considered in establishing personal jurisdiction); *N. Light Tech., Inc. v. N. Lights Club*, 97 F.Supp.2d 96, 107 (D.Mass.2000) (operation of Internet site found to satisfy minimum contacts test); *Hasbro, Inc. v. Clue Computing, Inc.*, 994 F.Supp. 34, 39 (D.Mass.1997) ("these concepts [of personal jurisdiction] should be sensitive to the unique nature of cyberspace, a non-traditional medium through which the contacts between the defendant and the forum state can occur"); *Digital Equip. Corp. v. Alta-Vista Tech.*, 960 F.Supp. 456, 463 (D.Mass. 1997) (Internet-based contacts were considered in determining whether the assertion of personal jurisdiction was proper); *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 511 (D.C.Cir.2002) (interactive nature of Internet contacts would have justified assertion of personal jurisdiction over the defendant had it been properly served);[6] *CompuServe v. Patterson*, 89 F.3d 1257, 1267 (6th Cir.1996) (personal jurisdiction is proper when a non-resident defendant regularly conducts business over the Internet); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1123 (W.D.Pa.1997) ("[w]ith this global revolution looming on the horizon, the develop-

ment of the law concerning the permissible scope of personal jurisdiction based on Internet use is in its infant stages"); *Cody v. Ward*, 954 F.Supp. 43, 47 (D.Conn.1997) (extensive e-mail and phone calls about a stock purchase are sufficient minimum contacts).

Finally, and because the relatedness and purposeful availment prongs are satisfied, the Court weighs the reasonableness of personal jurisdiction by examining the so-called "Gestalt factors." *See Sawtelle*, 70 F.3d at 1394 (citing *Ticketmaster–New York*, 26 F.3d at 210). The First Circuit has enumerated the following five Gestalt factors to be used in determining the fairness and reasonableness of asserting personal jurisdiction: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; (5) the common interests of all sovereigns in promoting substantive social policies. *Nowak*, 94 F.3d at 717 (citing *163 Pleasant St. Corp.*, 960 F.2d at 1088) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

A plaintiff's choice of forum is traditionally granted some deference, *see Daynard*, 290 F.3d at 62, but it is true that all of Eximias' witnesses and documents are located in Pennsylvania. Nevertheless, it does not appear that the inconvenience to the Defendant is so severe as to overcome the deference due to the Plaintiff's selection of forum. Moreover, Rhode Island

---

**6.** The District of Columbia Circuit Court drew the following apt comparison:

In the last century, for example, courts held that, depending upon the circumstances, transactions by mail and telephone could be the basis for personal jurisdiction notwithstanding the defendant's lack of physical presence in the forum. There is no logical reason why the same should not be true of transactions accomplished through the use of e-mail or interactive websites. Indeed, application of this precedent is quite natural since much communication over the Internet is still transmitted by ordinary telephone lines.

*Gorman*, 293 F.3d at 511 (footnote omitted).

has a substantial interest in providing a forum for its resident (Jackson) to resolve his claim. The efficient administration of justice also favors Rhode Island, since this action is already proceeding here and this Court has become familiar with the claims involved. *See Daynard,* 290 F.3d at 62–63.

For all of these reasons, therefore, this Court declines to dismiss this case for lack of personal jurisdiction.

### 2. *Dismissal for Lack of Venue,[7] Transfer of Venue, and Forum Non Conveniens*

█ Title 28 U.S.C. § 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *See also Hoffman v. Blaski,* 363 U.S. 335, 343–44, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960) ("the power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff"). The party moving to transfer venue has the burden of clearly establishing that the action could have been brought in the first instance in the transferee district. *See* 17 James Wm. Moore et al., *Moore's Federal Practice* ¶ 111.12[3] (3rd ed.1999) ("venue involves a privilege personal to the defendant because the purpose of venue statutes is to prevent litigation from being conducted in a forum that is inconvenient to the defendant, or unfair because the forum lacks a sufficient connection with the events giving rise to the claim"); *id.* at ¶ 110.01[5][c]. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for

transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

█ Transfer may be appropriate if the movant can establish that the balance of convenience weighs in its favor. *Paradis v. Dooley,* 774 F.Supp. 79, 82 (D.R.I. 1991). The movant must make a strong showing that transfer of venue is appropriate under the circumstances. *Levinger v. Matthew Stuart & Co., Inc.,* 676 F.Supp. 437, 441 (D.R.I.1988). "When a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2nd Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).

█ Inconvenience to the defendant is not sufficient to grant § 1404(a) relief, where the transfer would merely shift the inconvenience to the other party. *Shutte,* 431 F.2d at 25; *Scheidt v. Klein,* 956 F.2d 963, 966 (10th Cir.1992). "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen,* 376 U.S. at 645–46, 84 S.Ct. 805.

█ Many of the same factors used to determine whether transfer of venue is appropriate apply equally to a *forum non conveniens* analysis. *See Ryan, Klimek, Ryan P'ship v. Royal Ins. Co. of Am.,* 695 F.Supp. 644, 646 (D.R.I.1988). The public and private interest factors applied in the

---

**7.** Support for dismissing a suit outright for improper venue is scant. Defendant cites no case endorsing such an approach.

*forum non conveniens* determination in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and confirmed in *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), are similarly applied in a motion for § 1404(a) transfer. *Paradis,* 774 F.Supp. at 82.

Defendant has not demonstrated that this "balance of inconvenience" mandates either dismissal for *forum non conveniens* or a transfer of venue to the Eastern District of Pennsylvania. Although it asserts that its witnesses and "the majority of documents" relating to the agreement are located in Pennsylvania, *see* Defendant's Memorandum, p. 14, it does not specify the relevant witnesses (other than John A. Kenward) or their proposed testimony. *See Factors Etc., Inc.,* 579 F.2d at 218 (requiring such identification). Furthermore, the distance between Pennsylvania and Rhode Island is not great. *See Ticketmaster–New York,* 26 F.3d at 210 (noting that reasonableness is frequently gauged by the geographical proximity of the defendant to the forum) (citing *Dion v. Kiev,* 566 F.Supp. 1387 (E.D.Pa.1983) (asserting personal jurisdiction over New York defendant forced to defend defamation suit in Pennsylvania)). Nor is there any allegation that this action was brought with improper or vexatious motives. *See id.* at 211 (stating that vexatious suits are frequently dismissed under the doctrine of *forum non conveniens* ). It is unclear, at this early stage of the litigation, which state's law will govern the substance of this dispute, but Massachusetts, Pennsylvania, or Rhode Island are the leading candidates. In two of three cases, therefore, this Court dares say that it will prove as competent as a Pennsylvania court at interpreting and applying the relevant law. Moreover, should Pennsylvania law govern, this Court is entirely capable of applying it.

For all of these reasons, therefore, the Court declines to dismiss the case, either for improper venue or *forum non conveniens,* and likewise declines to transfer venue to the Eastern District of Pennsylvania.

*Conclusion*

Based on the foregoing analysis, Defendant Eximias Pharmaceutical Corp.'s Motion to Dismiss is DENIED.