**DESIGN STRATEGY CORPORATION,**
Plaintiff,

v.

**Ann NGHIEM, Defendant.**

**No. 97 Civ. 0718(RLC).**

United States District Court,
S.D. New York.

Feb. 11, 1998.

The Dweck Law Firm, LLP, New York City (Jack S. Dweck, of counsel), for Plaintiff.

Solazzo & Rosenthal, New York City (Richard M. Solazzo, of counsel), for Defendant.

### OPINION

CARTER, District Judge.

Defendant moves to dismiss plaintiff's complaint for lack of personal jurisdiction. Rule 12, F.R.Civ.P. Plaintiff moves, *inter alia,* to amend the original complaint, adding an additional party, Rule 15(a), F.R.Civ.P., and to compel discovery. Rule 37, F.R.Civ.P.

### I. Introduction

Plaintiff Design Strategy Corporation ("Design") is engaged in the business of recruiting computer programmers and technicians and hiring them out to corporate clients as temporary staffers or consultants. In April, 1996, defendant Anne Nghiem, a Canadian resident of some twenty years, responded to plaintiff's recruiting ad in a Toronto newspaper describing a job opportunity in Phoenix, Arizona for computer programmers. After several interviews in Toronto, plaintiff offered defendant a position as a computer consultant for the American Express Company. Defendant was informed that she would be required to move to Phoenix to work at American Express's offices, but that she would remain employed and paid by Design. Defendant accepted the job offer.

Prior to relocating to Phoenix, defendant received a copy of a seven page, two column, single spaced document entitled "Employment Contract Agreement" (the "Agreement"). The Agreement provided for defendant's relocation to Phoenix, Arizona to work at facilities operated by American Express from May 13, 1996, to May 12, 1997. The contract also provided, *inter alia*, an indemnity to Design for all losses suffered by Design as a result of any breach of the contract, and an agreement to reimburse Design for relocation expenses in the event that defendant resigned or was terminated for cause before completing the first year of employment. Defendant noticed that the Agreement incorrectly listed her Toronto address and had many typographical errors. (Def.'s Mem. of Law at 5). Defendant did not sign this Agreement.

On May 13, 1996, approximately two weeks after first receiving a copy of the Agreement, defendant moved from Toronto to Phoenix. On that same day, defendant received another copy of the Agreement, this time with her correct Toronto address. (Id.) After being advised that she could not commence work until she signed the Agreement, defendant signed it and commenced work as scheduled.

On December 18, 1996, defendant informed plaintiff by letter that she was resigning from her employment with Design due to other opportunities. Her resignation became effective January 10, 1997. Plaintiff later learned that defendant was subsequently hired by CDI Information Services ("CDI"), a competitor of Design.

Design filed suit against defendant on February 4, 1997, in the Southern District of New York. The suit makes claims for, *inter alia*, damages, injunctive relief, breach of contract, breach of fiduciary duties, breach of fiduciary obligations and unfair competition. Plaintiff now seeks to amend its complaint to add CDI and Edward Fuccello as defendants. Edward Fuccello is allegedly employed by CDI and allegedly knowingly engaged defendant to break her contract with Design.[1] Plaintiff further moves to compel defendant to respond to plaintiff's interrogatories issued on March 20, 1997, and to compel the defendant to appear for deposition. Defendant, in turn, seeks to dismiss the instant suit for lack of personal jurisdiction.[2]

Defendant first argues that she lacks the minimum contacts required for the court to assert personal jurisdiction under New York's long arm statute. (Def.'s Mem. of Law at 7). Specifically, she avers that the Agreement was formed in Toronto, Canada and/or Phoenix, Arizona and that defendant's presence in New York was limited to a single family visit to upstate New York approximately ten years ago. Defendant also raises an equity argument by implying that the expense of pursuing litigation in New York would render the forum so inconvenient as to preclude defendant from effectively defending herself. (Def.'s Reply Mem. of Law at 11).

In addition, defendant argues that she, a computer programmer, was placed in an unfair position by plaintiff, a corporation, in that she was required to sign the Agreement after she had already moved to Phoenix and under threat of not being able to work without so doing. Defendant also emphasizes that she did not consult a lawyer prior to signing the Agreement, a contract that she claims is highly tilted in plaintiff's favor. In sum, she points to the "disparity between [plaintiff's] and [defendant's] experience in the negotiation and drafting of [labor agreements], the circumstances and pressures surrounding Nghiem's execution of the Agreement, and the unreasonably favorable (to Design Strategy) provisions included in the Agreement" as enough to render the Agreement overreaching, unconscionable, and, therefore, unenforceable. (Def.'s Reply Mem. of Law at 9, 10).

---

1. At the time Design filed its initial complaint, it was unaware of the name of defendant's new employer or the means by which defendant acquired a different job.

2. Defendant also filed a complaint with the Equal Employment Opportunity Commission ("EEOC") charging plaintiff with violating Title VII. The EEOC complaint alleges that defendant's contract terms are more onerous than those established for employees of U.S. citizenship or alienage.

Finally, if defendant is found to be subject to the court's personal jurisdiction, she argues that paragraph 19.1 of the Agreement dictates that any claim relating to breaching the Agreement should be referred to arbitration.

■ Although plaintiff makes a cursory reference to minimum contacts as support for personal jurisdiction in this matter,[3] paragraph 22.1 of the Agreement is the primary basis upon which it disputes defendant's claim. That paragraph reads:

### XXII. APPLICABLE LAW

22.1 This agreement, its construction and effect shall be determined under the law of the State of New York, and each of the parties hereby designate the Secretary of State of New York as its agent for service of process and voluntarily submits to the jurisdiction of the Courts of the State of New York for the resolution of any dispute herein, other than as provided for the resolution of disputes by arbitration.

Plaintiff argues that defendant's prior consent to the forum selection clause gives her no excuse to disavow the Agreement short of fraud or mutual mistake, neither of which defendant actually raises as issues in this case.

### II. Analysis

Although courts once frowned upon enforcement of forum-selection clauses, it is now settled law that parties may bargain in advance to select the forum in which their disputes will be adjudicated. *Haskel v. FPR Registry, Inc.,* 862 F.Supp. 909, 912 (E.D.N.Y.1994); *see also M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 13, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 590–596, 111 S.Ct. 1522, 113 L.Ed.2d 622

(1991). Any remaining hostility towards forum-selection clauses "is today simply a vestigial remainder of an outmoded doctrine." *Bense v. Interstate Battery System of America, Inc.,* 683 F.2d 718, 721 (2d Cir.1982).

In diversity cases such as this one, the Second Circuit has held that federal common law is the procedural vehicle through which forum selection clauses are enforced. *Jones v. Weibrecht,* 901 F.2d 17, 19 (2d Cir.1990) (holding that questions of venue and enforcement of forum selection clauses in diversity cases are essentially procedural, rather than substantive, in nature and subject to federal standards); *see also Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (holding that the validity of motion for a change of venue under 28 U.S.C. § 1404(a) to forum designated in the parties' forum selection clause should be treated as federal issue). Therefore, this analysis begins with the standards set forth in *M/S Bremen,* the case in which the Supreme Court first clearly held that forum selection clauses were to be enforced if they were the product of a fair bargain.[4]

In *M/S Bremen,* the Supreme Court ruled that "a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power ... should be given full effect," unless it was clearly shown that enforcement would be unreasonable and unjust. 407 U.S. at 12–13, 92 S.Ct. 1907. Inconvenience alone was held not to be sufficient grounds to avoid the application of a forum selection clause unless the party seeking to avoid the clause can show that "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Id.* at 18, 92 S.Ct. 1907.

---

**3.** Plaintiff asserts that defendant should be subject to this jurisdiction under CPLR § 302(a)(3). This statute confers jurisdiction over any non-domiciliary who commits a tortious act outside the state causing injury within the state if he regularly does business in the state, should reasonably expect his actions to have consequences in the state, or utilizes real property situated within the state. (Pl.'s Mem. of Law at 10–11).

**4.** In any event, applying New York law would not necessarily compel a different result. New York courts have on several occasions applied a similar if not identical standard as found in federal common law and have cited *M/S Bremen* favorably. *See e.g., National Union Fire Ins. Co. v. Weir,* 131 A.D.2d 380, 381, 517 N.Y.S.2d 141, 142 (1st Dep't 1987) (holding that forum selection clause should be enforced absent showing of contrary public policy, fraud or mistake).

In arguing that the forum selection clause is unenforceable, defendant's "David versus Goliath" presentation of the superior business acumen of plaintiff in regards to contract negotiation is unpersuasive. In *Carnival Cruise,* the Supreme Court determined that a forum selection clause could bind contracting parties despite disparities in business experience and even when the contract in question was a form contract and not subject to negotiation. 499 U.S. at 594, 111 S.Ct. 1522. In that case, defendant ship line successfully dismissed passengers' suit brought in federal district court in Washington, plaintiffs' home state, due to a forum selection clause found on the back of the passengers' tickets; the clause required plaintiffs to bring suit on all claims in the Florida courts. The Court held that the inclusion of a reasonable forum clause in a form contract is permissible for justifiable business reasons such as the dispelling of confusion as to where litigation should be pursued and the potential for multiple locales for litigation due to passenger geographical diversity. *Id.* In light of this precedent, defendant's claims that the Agreement was "not the product of any negotiation between parties" and that plaintiff possessed an unfair advantage in business expertise are unavailing. (Def.'s Reply Mem. of Law at 7, 9).

Defendant's argument that she suffered undue pressure to sign the Agreement is likewise unavailing. She claims that, having moved from Toronto to Phoenix and faced with the prospect of not being able to work, she had little choice but to sign the Agreement. (Id. at 5). However, defendant was given a copy of the Agreement several weeks prior to her move. Indeed, aware of her imminent departure from Canada after twenty years of residence to start a new job, defendant had substantial time and incentive to read her labor contract. While some may argue that the language of legal contracts exceeds that of COBOL, IMS, and other computer languages in complexity, the court is hardpressed, in light of defendant's education and the gravity of her decision to relocate to a foreign country, to recognize that she could not adequately comprehend the forum selection provision. Even if she had failed to understand the contract, the court is confidant that she could have sought assistance from plaintiff or some other source in clarifying any ambiguities in the Agreement prior to her move. Thus, the court finds that defendant was not unduly coerced into signing the Agreement.

■ Finally, defendant argues that equity "compels the unenforceability of the forum selection provision" since the expense of litigating in New York renders it an inconvenient forum. (Id. at 11). In considering the inconvenience claim, the moving party carries the "heavy burden of proof" to set aside a previously agreed to forum selection clause on grounds of inconvenience. *M/S Bremen,* 407 U.S. at 18, 92 S.Ct. 1907.

The defendant in this case has not met this burden. She makes no substantive arguments supporting her contention that the inconvenience of the present forum would be so great as to deprive her of her day in court. On the contrary, "defendant's counsel was authorized to consider waiving any jurisdictional issues *if* plaintiff agreed to depose [defendant] in Arizona, or pay for her expenses in traveling to the forum, or conduct the deposition by telephone or other remote means." (emphasis in original) (Def.'s Mem. of Law at 14, 15). This willingness to waive contesting any jurisdictional issue solely on the basis of a deposition's locale indicates that conducting a trial in New York would not be "gravely inconvenient." *See Carnival Cruise,* 499 U.S. at 594, 111 S.Ct. 1522 (holding that Florida would not be so inconvenient for the Washington state-based couple that they would be deprived of their day in court). Moreover, any inconvenience arising from the Agreement's forum selection clause was foreseeable at time of contracting. Thus, defendant's inconvenience argument fails.

In short, enforcing the forum-selection clause does not offend the principles of equity or fundamental fairness. There is no indication that plaintiff chose New York as the forum in which disputes were to be resolved as a means of discouraging employees from pursuing valid claims. Indeed, such a requirement makes sense. Plaintiff is a New York-based company with employees working on a contractual basis for clients spread

across the country and, as such, has a strong interest in limiting litigation arising from employment contracts to the New York forum. A forum selection clause has the "salutary effect of dispelling any confusion about where suits arising from the contract must be brought out and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions." *Id.* Thus, under federal common law and in accordance with the principles of equity, the court may exert personal jurisdiction over defendant pursuant to the forum selection clause contained in the Agreement.[5]

■ Nevertheless, having found that the forum selection clause is enforceable, the court also finds merit in defendant's argument that the provision requiring arbitration takes precedence over the instant suit. The Agreement reads in relevant part:

## XIX. ARBITRATION

19.1 Any controversy or claim arising out of or relating to this Agreement, including any alleged breach, shall be settled in accordance with the rules of the American Arbitration Association–Commercial Division, and judgment upon the award may be entered in any court having jurisdiction of the parties.

■ The instant suit undoubtedly arises out of a breach of contract and triggers the implementation of the Agreement's paragraph 19.1 prior to a lawsuit. All of plaintiff's claims are related to defendant's alleged breach as are defendant's counterclaims and defenses asserting the Agreement's unconscionability. A court need only find that "there exists an interpretation of the parties' agreement that covers the dispute at issue" in order to send the dispute to arbitration. *In re Chung,* 943 F.2d 225, 230 (2d Cir.1991). Accordingly, the litigation must be stayed against Ann Nghiem pending arbitration of the dispute. Defendant's counterclaims and Title VII claim are likewise stayed. *See Gilmer v. Interstate/Johnson Lane Corp.,*

500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) ("[i]t is by now clear that statutory claims may be the subject of arbitration agreement, enforceable pursuant to the [Federal Arbitration Act].") The parties are directed to arbitration.

**IT IS SO ORDERED.**

---

5. Since personal jurisdiction is established by the forum selection clause, plaintiff's allegations concerning jurisdiction under CPLR § 302 are not reached.