MICROFIBRES, INC., Plaintiff,

v.

Michelle McDEVITT–ASKEW, Defendant.

Civ.A. No. 98–026–L.

United States District Court,
D. Rhode Island.

Sept. 1, 1998.

William R. Grimm, Mark Bianchi, Hinckley, Allen & Snyder, Providence, RI, for plaintiff.

Vincent F. Ragosta, Jr., Matthew Oliverio, Providence, RI, for defendant.

### DECISION AND ORDER

LAGUEUX, Chief Judge.

Plaintiff, Microfibres, Inc., a Rhode Island corporation with manufacturing facilities in North Carolina, ("plaintiff" or "Microfibres") brought this action in the Rhode Island Superior Court sitting in Providence County against defendant Michelle McDevitt–Askew ("defendant" or "McDevitt–Askew"). The complaint alleges that McDevitt–Askew, after leaving the employ of Microfibres, violated the terms of the noncompete agreement which she signed as part of her employment contract, by working for a competitor, Culp, Inc., a North Carolina corporation, ("Culp"). McDevitt–Askew claims her new employment does not violate the noncompete agreement.

On January 8, 1998, the Rhode Island Superior Court granted Microfibres' motion for a temporary restraining order against McDevitt–Askew. Pursuant to the order, McDevitt–Askew is restrained from working for Culp, or any other flock industry competitor of Microfibres as restricted by the noncompete agreement with Microfibres. McDevitt–Askew is also restrained from disclosing or using any of Microfibres' confidential and proprietary information in violation of the confidentiality agreement entered into with Microfibres.

On January 20, 1998, McDevitt–Askew removed the matter to this Court. The matter is presently before the Court on defendant's motion to dismiss the complaint, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue and pursuant to the doctrine of forum non conveniens or, in the alternative, to transfer this action to the United States District Court for the Middle District of North Carolina, Greensboro Division pursuant to 28 U.S.C. § 1404(a) (1994).

### I. Background

Microfibres is a Rhode Island corporation with its headquarters located in Pawtucket, Rhode Island. In addition to the Rhode Island office, plaintiff has manufacturing facilities in North Carolina and Georgia. Microfibres manufactures, among other things, flocked specialty products and upholstery material including flock, flocked adhesives, and flocked fabrics. Microfibres has two divisions—the Upholstery Fabrics Division and the Specialty Products Division. Specialty products include any product manufactured and sold by Microfibres that is not used for upholstery. Microfibres employs a particular method of manufacturing flocked fabric to which other manufacturers do not have access. Microfibres considers its manufacturing technique to be a secret and believes that this gives it a competitive advantage in the marketplace.

On January 5, 1995, McDevitt–Askew was hired by Microfibres as a flocked upholstery designer at its facility in Winston–Salem, North Carolina. In 1996 McDevitt–Askew's design responsibilities were divided between the Upholstery Fabrics and the Specialty Products Divisions. Prior to working for Microfibres, McDevitt–Askew had worked for Culp in North Carolina in its mattress ticking division. Before McDevitt–Askew was given an official employment offer from Microfibres, she was interviewed by at least three of its employees. Albert Bolton met with McDevitt–Askew on December 21, 1994. He claims that at that time he verbally outlined the terms of an employment offer including compensation and the requirement that she sign a secrecy and confidentiality

agreement as well as a noncompete agreement (collectively, the "Agreement"). On January 4, 1995, Bolton prepared an official offer of employment which he sent to McDevitt–Askew. The letter sent by Bolton included the terms discussed at the December 21 meeting. This letter specifically noted that McDevitt–Askew would have 30 days to sign a two-year noncompete agreement as part of the employment contract.

On January 5, 1995, McDevitt–Askew reported for work at Microfibres and was presented with the Agreement by Janice Volger, the Director of Human Resources. McDevitt–Askew claims that she felt pressure to quickly review the many documents given to her and to sign them immediately. She further alleges that she did not feel she was in any position to negotiate the terms of the Agreement or to consult a lawyer. However, she never requested more time to examine the Agreement or to consult a lawyer nor was she specifically told she had to sign the papers at that moment.

Among the provisions contained in the Agreement were a forum selection clause and a choice of law provision. The relevant clause states:

> This Agreement shall be governed by and construed in accordance with the laws of Rhode Island. If suit is brought at any time based on any controversy or claim arising out of, or relating to this Agreement, I hereby submit to the jurisdiction and venue of any court sitting in the State of Rhode Island.

During her employment at Microfibres, defendant's contacts with Rhode Island consisted of approximately three visits. Defendant also communicated with Microfibres headquarters in Rhode Island by an indeterminate, although small, number of phone calls and written correspondences. Although defendant did have some need to communicate with Microfibres' Rhode Island headquarters, her primary job responsibilities and her direct supervisor were in North Carolina.

In November, 1997, McDevitt–Askew resigned from Microfibres. When leaving, she was reminded of her obligations under the secrecy and noncompete provisions of the Agreement. McDevitt–Askew then accepted a position as a mattress ticking designer at the Culp Home Furnishings business unit.

In December, 1997, Microfibres informed McDevitt–Askew and Culp that Culp was a competitor of Microfibres and as such, McDevitt–Askew's employment there was in violation of the Agreement with Microfibres. As previously indicated, on January 8, 1998, the Rhode Island Superior Court issued a temporary restraining order preventing McDevitt–Askew from working at Culp.

After removing this action to this Court, McDevitt–Askew moved for dismissal, or, in the alternative, to transfer this case to the U.S. District for the Middle District of North Carolina in accordance with 28 U.S.C. § 1404(a). Plaintiff has objected to these motions and both parties filed briefs. After hearing oral arguments the Court took the motions under advisement. These matters are now in order for decision.

## II. Standard for Decision

The First Circuit has set forth the standard for ruling on motions to dismiss for want of personal jurisdiction. "The standard for deciding such motions is commonly referred to as the *'prima facie'* standard." *Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir.1992). This requires the district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction. *Id.* at 675. "To meet its burden, the plaintiff must establish sufficient facts to support a prima facie case authorizing personal jurisdiction over the defendant under both the forum's long-arm statute and the due process clause of the Constitution." *U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir.1990), citing *American Express International, Inc. v. Mendez–Capellan*, 889 F.2d 1175, 1179 (1st Cir.1989).

"In determining whether a prima facie showing has been made, the district court is not acting as a fact finder. It accepts properly supported proffers of evidence by a plaintiff as true." *Boit*, 967 F.2d at 675. However, plaintiff may not merely rely on its pleadings; it must make its case based on

facts set forth in the record. *See Kowalski v. Doherty, Wallace, Pillsbury & Murphy, Attorneys at Law*, 787 F.2d 7, 9 (1st Cir. 1986), citing *Chlebda v. H.E. Fortna and Brother, Inc.*, 609 F.2d 1022, 1024 (1st Cir. 1979).

## III. Discussion

Defendant asserts two arguments in support of dismissal. The first is that this Court has no personal jurisdiction over her. The second is that Rhode Island is an improper or inconvenient venue. As an alternative to dismissal, defendant seeks transfer of this case to North Carolina pursuant to 28 U.S.C. § 1404(a).

### A. Personal Jurisdiction

Personal jurisdiction implicates the power a court has over a defendant. *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 143 (1st Cir.1995). In *Levinger v. Matthew Stuart & Co., Inc.*, 676 F.Supp. 437 (D.R.I.1988), this Court observed that:

> Whether a federal court has personal jurisdiction over a defendant depends upon two criteria: (1) whether the mandates of the forum state's long-arm statute have been satisfied, and (2) whether the defendant has been hailed into the particular court in accordance with the due process clause of the Fourteenth Amendment to the United States Constitution.

*Id.* at 439. As in *Levinger*, here it is only necessary to look to the second criterion "[s]ince the Supreme Court of Rhode Island has held that Rhode Island's long-arm statute reaches to the full extent of the Fourteenth Amendment." *Id.* citing *Conn v. ITT Aetna Finance Co.*, 105 R.I. 397, 252 A.2d 184, 186 (R.I.1969).

■ Under the Fourteenth Amendment, a court may obtain personal jurisdiction over a defendant through general jurisdiction, specific jurisdiction, personal service upon defendant within the forum state, through specific consent, or through waiver by the defendant.

### 1. General Jurisdiction

■ General jurisdiction is obtained when a defendant engages in activities that are so substantial and of such a nature that they will justify a lawsuit against her on causes of action distinct from those activities. *See International Shoe Co. v. State of Washington Office of Unemployment Compensation and Placement*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). To be subject to general jurisdiction a defendant must have "continuous and systematic" contacts with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Substantial contacts alone are not enough. *Capizzano v. Walt Disney World Co.*, 826 F.Supp. 53, 55 (D.R.I.1993).

■ Here, it is clear that defendant did not have continuous and systematic contacts with Rhode Island. Indeed, defendant did not even have substantial contacts. As the record indicates, defendant's contacts with Rhode Island were relatively few and of a limited nature, therefore, the doctrine of general jurisdiction does not apply to this case.

### 2. Specific Jurisdiction

■ "When general jurisdiction is lacking, the lens of judicial inquiry narrows to focus on specific jurisdiction." *See Foster–Miller*, 46 F.3d at 144. In *Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir.1995), the Court put forth a three-prong test to determine if specific jurisdiction exists.

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Id.* at 1389, quoting *United Electrical Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir.1992). For the third prong, the First Circuit employs five factors, called the "Gestault factors" to judge the reasonable-

ness of subjecting nonresidents to personal jurisdiction. *Sawtelle*, 70 F.3d at 1389. The five Gestault factors are: "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." *Id.* at 1394.

### a. Relationship Between the Claim and Defendant's Forum Activities

 The claim by plaintiff in this case is for breach of contract. Defendant's action resulting in the alleged breach occurred in North Carolina, where defendant lives and works. Defendant's strongest tie to Rhode Island is through her execution of the agreement, but that contract was negotiated and signed in North Carolina and even stated in its title that it was a contract for North Carolina employees. Thus, plaintiff's cause of action does not arise out of or relate to defendant's forum-state activities. Therefore, the first prong of the test has not been satisfied.

### b. Purposeful Availment of Privilege of Conducting Activities in the Forum

 This Court has noted that a defendant's consent to a choice of law provision is at least some indication that she purposefully availed herself of benefits from the forum state. *See Levinger*, 676 F.Supp. at 440 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). However, a contract alone is not enough; prior dealings, the terms of the contract itself, and the actual and contemplated course of dealings of the parties are necessary elements of the "contract plus" test laid out in *Burger King*. *Levinger*, 676 F.Supp. at 440. To satisfy the purposeful availment requirement, there must be a voluntary decision by the defendant to inject herself into the local economy as a market participant. *See Northeastern Land Services, Ltd. v. Schulke*, 988 F.Supp. 54, 58 (D.R.I.1997), citing *Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.*, 764 F.2d 928, 933 (1st Cir.1985).

 Because of defendant's limited contacts with Rhode Island the only way she could have availed herself of any privileges or benefits in Rhode Island is through the forum selection clause in the Agreement. Although, as stated above, such a contract is a significant factor in finding the existence of personal jurisdiction, it is not dispositive. Here, the contract at issue did little to confer on defendant any of the privileges and benefits of the forum state. The contract was essentially a list of conditions that defendant agreed to follow and rights defendant was giving up as a consequence of her employment. The only benefit to her was the predictability of the applicable law and the place of suit. That is of little consolation when matched with the detriment of having to come to Rhode Island to sue or be sued. Her waiver of the right to challenge personal jurisdiction in Rhode Island, thus, cannot be called a purposeful availment of the benefits of Rhode Island law, and since she has not interjected herself into the local economy as a market participant, the second prong of the test also has not been satisfied.

### c. The Gestault Factors

Finally, the third prong requires that the exercise of jurisdiction must be reasonable in light of the Gestault factors laid out in *Sawtelle*, and mentioned above. These factors are employed by the First Circuit to help ensure that a court achieves substantial justice in the exercise of its jurisdiction. *Sawtelle*, 70 F.3d at 1394. However, here, in light of plaintiff's failure to satisfy the first two prongs of specific jurisdiction it is unnecessary to decide whether interests of justice would be served by applying specific jurisdiction. *See Id.* at 1394. (noting that failure to demonstrate the necessary minimum contacts eliminates the need to reach the issue of reasonableness). Consequently, the doctrine of specific jurisdiction has no application to this case.

### 3. Personal Service within the Forum State

 However, in cases where both general and specific jurisdiction are lacking, it is still possible to obtain personal jurisdiction

by service of process on the defendant within the forum state. "[I]f a defendant is found and served within the state, minimum contacts need not be established, and jurisdiction may be asserted on the basis of the state's sovereignty." *Driver v. Helms*, 577 F.2d 147, 156 n. 25 (1st Cir.1978), rev'd on other grounds, 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1, (1980). In this case defendant was not found within the jurisdiction. However, her lawyer, who was in the state on January 9, 1998, accepted service of the summons and complaint on her behalf. Defendant's lawyer has claimed in an affidavit that such acceptance was intended only as an accommodation to plaintiff. That argument holds no water because the matter is judged by an objective criterion rather than a subjective one. It matters not what was intended when service was accepted; the only thing that is important is that service was, in fact, accepted. It is well settled that lawyers may act as agents for acceptance of service of process on a defendant. *See Fields v. S. & M. Foods, Inc.*, 105 R.I. 161, 249 A.2d 892 (R.I.1969) (allowing a default judgment to stand after defendant's attorney had been served with process). No suggestion is made that defendant's lawyer was not actually authorized to accept service on her behalf. Even if he was not, he had the apparent authority to do so. Therefore, his acceptance constituted valid service on defendant.

4. Personal Jurisdiction by Waiver

Defendant waived her right to challenge personal jurisdiction both before and during this litigation. As a general rule, if a defendant is not present in the state and lacks minimum contacts with the forum state, that state lacks the ability to enter a valid binding judgement against the defendant. *See International Shoe*, 326 U.S. at 316, 66 S.Ct. 154. To allow such a judgment would deny a defendant her due process rights. *Id.* However, the Supreme Court has stated that since personal jurisdiction protects an individual's liberty interest, it can be waived like other rights of that type, and may be waived at trial. *See Insurance Corp. Of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702–03, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

a. Waiver at Trial

In Rhode Island when a party makes an appearance in court for any purpose other than to attack the jurisdiction of the court, the right to challenge personal jurisdiction is waived. *See Industrial Trust Co. v. Rabinowitz*, 65 R.I. 20, 13 A.2d 259, 260 (R.I.1940). In this case, defendant's attorney claims that he specifically reserved the right to challenge personal jurisdiction. It is clear, however, that he also appeared to argue the merits of the case before the Superior Court in Rhode Island at the temporary restraining order hearing on January 8, 1998. Such an attempted reservation of rights is ineffectual if arguments are also made relating to the merits of the case. *Id.* Therefore, defendant, through her attorney, waived her right to challenge personal jurisdiction while this case was still in the Rhode Island Superior Court. Consequently, the issue of personal jurisdiction was resolved before this case was ever removed to this Court.

b. Waiver Through Forum Selection Clause

Defendant also waived the right to challenge personal jurisdiction in Rhode Island when she signed the Agreement. She specifically consented to having all disputes arising from the Agreement litigated in Rhode Island. The great weight of authority is to the effect that a defendant may waive her right to challenge personal jurisdiction through a contract such as the one at issue here. *National Equipment Rental Ltd. v. Szukhent*, 375 U.S. 311, 315–316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964) (stating that "parties to a contract may agree in advance to submit to the jurisdiction of a given court."). *See also Inso Corp. v. Handelsges*, 999 F.Supp. 165, 166 (D.Mass.1998); *Packer v. TDI Systems*, 959 F.Supp. 192, 196 (S.D.N.Y. 1997) (holding that a party may agree, by contract, to the jurisdiction of a given forum); *Design Strategy v. Nghiem*, 14 F.Supp.2d 298 (S.D.N.Y.1998) (holding personal jurisdiction could be obtained through a forum selection clause in an employment contract).

Therefore, it is clear that this Court has personal jurisdiction over defendant and that

this is a proper venue for the lawsuit. Thus, the motion to dismiss for lack of personal jurisdiction and improper venue is denied.

### B. Forum Non Conveniens

■ Defendant also argues that this matter should be dismissed because of the doctrine of forum non conveniens. However, that doctrine is not applicable here. The doctrine of forum non conveniens is primarily applied when there is a choice between a United States forum and a foreign one. *Munsell v. La Brasserie Molson Du Quebec Limitee,* 618 F.Supp. 1383, 1386–87 (E.D.N.Y.1985). Since the enactment of 28 U.S.C. § 1404(a), the appropriate remedy for an inconvenient forum within the United States where the alternative forum is also within the United States, is to invoke that statute. The doctrine of forum non conveniens is no longer appropriate under circumstances such as these. *See American Dredging Co. v. Miller,* 510 U.S. 443, 449 n. 2, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994).

Therefore, the motion to dismiss for forum non conveniens is denied.

### C. Motion to Transfer

Finally, defendant moves that this case be transferred to the District Court in North Carolina, pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). While similar to the doctrine of forum non conveniens this statute gives more discretion to a district judge in determining whether to transfer a case. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), citing *Norwood v. Kirkpatrick,* 349 U.S. 29, 31–32, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

Courts applying § 1404(a) must decide on a case by case basis whether to transfer. *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), citing *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). However, it is well settled that the party seeking the transfer bears a heavy burden of

showing the necessity of a transfer. *Leesona Corp. v. Duplan Corp.,* 317 F.Supp. 290, 296 (D.R.I.1970). Furthermore, this Court recognizes a presumption in favor of the plaintiff's choice of its home forum. *Ryan, Klimek, Ryan Partnership v. Royal Ins. Co. of America,* 695 F.Supp. 644, 647 (D.R.I.1988).

■ Under normal circumstances defendant would be hard pressed to show the necessity of transferring this case to North Carolina. Here, the defendant's task is made considerably more difficult because of the forum selection clause. Because courts look to the facts and circumstances of each case, there is no clear rule on the effect of a forum selection clause on the decision to transfer pursuant to § 1404(a). However, this Court finds the reasoning of the Court in *Knight Medical, Inc. v. Nihon Kohden America, Inc.* 765 F.Supp. 291 (M.D.N.C. 1991), to be persuasive. There the Court found that the party seeking transfer had failed to meet its burden because it had agreed to the forum selection clause and did not raise any complaints until the relationship with the other party had soured. *Id.* at 292. The Court further concluded that although there might be some difficulty and inconvenience in pursuing an action in the forum state, it could not ignore that party's acquiescence to the contract. *Id.*

The facts of the present case, when examined in light of the *Knight Medical* analysis, dictates a denial of the motion to transfer. This Court cannot overlook defendant's acceptance of the forum selection clause in the Agreement. This is especially true when, as in *Knight Medical,* the defendant did not question the forum selection clause until after relations with the employer had ceased.

■ Nonetheless, before giving substantial weight to the forum selection clause this Court must determine the validity and enforceability of that clause. The Supreme Court has set out the standard by which the enforceability of a forum selection clause is to be governed in *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907; 32 L.Ed.2d 513 (1972). *Bremen* states that forum selection clauses are prima facie valid and should be enforced unless enforcement is

shown by the resisting party to be unreasonable under the circumstances. *Id.* At 10. Such unreasonableness is found when there is fraud, overreaching, or inconvenience that would deprive a party of his day in court. *Id.* at 15, 92 S.Ct. 1907.

Defendant challenges the validity and enforceability of the forum selection clause based on the exceptions laid out in *Bremen* and additionally claims a court in Rhode Island should not recognize the forum selection clause.

### 1. Overreaching as Grounds for Invalidating the Forum Selection Clause

Defendant claims that the forum selection clause was obtained through overreaching by Microfibres. To support her claim defendant relies on: (1) the fact that the forum selection clause was in boilerplate language which all employees had to sign and (2) the notion that the bargaining positions of these two parties were inherently unequal.

### a. The Significance of Boilerplate Language

Defendant argues that a boilerplate contract should give this Court grounds for finding invalidity, especially where one party was a sophisticated corporate entity and the other a mere employee. Boilerplate language similar to the type used here is something this Court has considered relevant in the past, and has noted that the existence of a boilerplate contract should give a court pause. *See D'Antuono v. CCH Computax Systems, Inc.,* 570 F.Supp. 708, 714 (D.R.I. 1983). However, boilerplate language and a lack of bargaining power are not enough by themselves to invalidate a forum selection clause. *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). In *Carnival Cruise* a sophisticated corporate entity's boilerplate clause was enforced against a cruise ship passenger who lacked sophistication in such dealings and was not permitted to negotiate terms. Although the matter at issue in *Carnival Cruise* was not an employment contract, the reasoning utilized there is equally applicable here. *Spradlin v. Lear Siegler Management Services, Co., Inc.,* 926 F.2d 865, 867 (9th Cir.1991) (There is nothing in the case law ... to suggest that a different analysis applies to forum selection clauses in employment contracts than generally applies to commercial contracts).

### b. Unequal Bargaining Power of the Two Parties

"Mere inequality of bargaining power will not ... make a contract unconscionable; the questions are whether the parties were given an opportunity to read and understand the contract and whether the terms at issue are unreasonable." *Stereo Gema, Inc. v. Magnadyne Corp.,* 941 F.Supp. 271, 277 (D.P.R. 1996) (citing *Northwestern Nat'l Ins. v. Donovan,* 916 F.2d 372, 377 (7th Cir.1990)). Although defendant claims she felt pressure to sign the Agreement without having sufficient time to review it, she fails to allege any facts that would support her claim. Defendant does not allege that she ever actually asked for or was denied the opportunity to study the agreement or to consult an attorney. Her statements about the pressure she felt, without some other factual allegations, do not establish a "reality of factual circumstances" necessary to invalidate the forum selection clause. *Pascalides v. Irwin Yacht Sales North, Inc.,* 118 F.R.D. 298, 302 (D.R.I.1988).

Even if the forum selection clause was in a contract of adhesion, as she claims, it would still be enforceable under the circumstances. A forum selection clause in a contract of adhesion will be enforced if it is fundamentally fair. *Banco Popular de Puerto Rico v. Airborne Group PLC,* 882 F.Supp. 1212, 1215 (D.P.R.1995) (interpreting the holding of *Carnival Cruise,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)). As this forum selection clause is confined to the narrow parameters of the contract, it is fundamentally fair. *Cf. Carnival Cruise,* 499 U.S. at 586, 111 S.Ct. 1522 (holding forum selection clauses in form passage contracts are subject to scrutiny for fundamental fairness). Moreover, other courts have held that when parties of unequal bargaining power enter into a contract with a forum selection clause, and the party with the greater power refuses to remove the clause, it should nonetheless be enforced. *LFC Lessors, Inc. v. Pearson,* 585 F.Supp. 1362, 1364 (D.Mass.1984). It is a

sound business practice for some businesses to insist on forum selection clauses. If this contract were sprung on defendant in mid-employment or in such a way that she had to accept it and could not negotiate any terms, then its adhesive nature might be deemed unreasonable or unfair and cause the clause to be unenforceable. However, there are no facts to suggest defendant was placed in that position here. The need to find employment is not a form of duress. *Haskel v. FPR Registry, Inc.,* 862 F.Supp. 909, 916 (E.D.N.Y.1994). A court may refuse to enforce an adhesive contract, as unconscionable, where the dominant party uses duress and undue influence to force the weaker party to execute the agreement. *Fluor Western, Inc. v. G & H Offshore Towing Co.,* 447 F.2d 35, 39 (5th Cir.1971). In this case defendant only makes vague and conclusory statements to suggest there was undue influence and fails to state any facts that would support that position.

Assuming defendant was offered this contract on a take-it-or leave-it basis, there is no evidence to suggest she was unable to refuse the employment offer. She previously held a position with a competitor and was able to return to that same company upon leaving Microfibres; this suggests she was not held over a barrel in her employment options. If Microfibres was able to offer her a better job it may be due in part to the fact that it was able to maintain a cost effective and efficient operation by confining its personnel disputes to its corporate headquarters in Rhode Island where its corporate counsel and legal department are located. Defendant was given something in return for her agreement to the forum selection clause; her employment with Microfibres. Even when such an arrangement is not openly bargained for, the Supreme Court has acknowledged that it is a legitimate practice. *Carnival Cruise Lines,* 499 U.S. at 585–86, 111 S.Ct. 1522 (noting that, despite the lack of bargaining by passengers, forum selection clauses may be permissible because of the benefits they confer to both parties including the likelihood of a reduced price, flowing from savings to the cruise line). Since the inconvenience to defendant of litigating in Rhode Island was foreseeable, the forum selection clause is enforceable, absent a showing that maintaining a lawsuit here is so burdensome as to deprive the defendant from having her day in court. *See Bremen,* 407 U.S. at 18, 92 S.Ct. 1907. Moreover, it has also been held that an employment contract, containing a forum selection clause, offered on a take-it-or-leave-it basis is not to be automatically invalidated on the basis of overreaching by the employer. *See Haskel,* 862 F.Supp. at 916.

c. Inconvenience That Would Deny Defendant her Day in Court

Although simple inconvenience is not enough to overcome a valid forum selection clause, *Bremen* states that a level of inconvenience so great as to deprive a defendant of her day in court is a reason for invalidation. 407 U.S. at 19, 92 S.Ct. 1907. Defendant claims that she does not have the financial means to defend this action in Rhode Island and that as a mother she needs to be home with her children. Furthermore, she claims that because most of the documentary evidence and witnesses are in North Carolina she would be unable to defend in Rhode Island.

Defendant fails to specifically allege why she is financially unable to defend this action. She merely relies on the broad conclusory statement that she does not have financial means. Mere assertions about the financial difficulty of defending in the selected forum are not enough to warrant transfer. *See Arrow Plumbing,* 810 F.Supp. at 373. In *Arrow Plumbing,* this Court held that a party's showing that it was in bankruptcy, absent additional evidence of its financial incapacity, had not met its burden. *Id.* at 373.

The personal inconvenience to defendant of litigating here does not carry the day because that inconvenience has been waived by her consent to the forum selection clause. *See D'Antuono,* 570 F.Supp. at 713. (By consenting to the inclusion of the forum designation in the agreements the defendant has in effect subordinated his convenience to the bargain).

In addition, wholly apart from the forum selection clause, any inconvenience regarding evidence and witnesses, raised by defendant, is not compelling enough to warrant transfer in this case. Many of the witnesses listed by

defendant are Microfibres' employees and are expected to be called by Microfibres. Those witnesses that cannot be made available in Rhode Island, for whatever reason, can be deposed. In this day and age, videotaped depositions can be used with effectiveness. In short, defendant will not be deprived of her day in court if she really wants to defend this case.

2. Parties Relationship to Rhode Island

■ It is generally required that a contract denominating Rhode Island law as the governing law therein must have a significant relationship to this jurisdiction in order to receive recognition in the courts. *Owens v. Hagenbeck–Wallace Shows Co.,* 58 R.I. 162, 192 A. 158, 164 (R.I.1937). *See also Providence & Worcester R.R. Co. v. Sargent & Greenleaf, Inc.,* 802 F.Supp. 680, 684 (D.R.I. 1992). Defendant contends that the necessary relationship is lacking in this case and thus the choice of law provision and the forum selection clause should not be given effect. A similar argument was made in *Nguyen v. Lewis/Boyle, Inc.,* 899 F.Supp. 58 (D.R.I.1995). In that case this Court held that where one party is domiciled or has a principal place of business in the state, an adequate relationship to the state exists. *Id.* at 60–61. In this case, the fact that Microfibres is headquartered in Rhode Island is enough to create the necessary relationship to Rhode Island for the purpose of contracting with its employees.

In short, this Court concludes that there is no basis for invalidating the forum selection clause in this case. Therefore, in light of the forum selection clause and the other factors discussed above, there is no sound legal reason for transferring this case to North Carolina pursuant to § 1404(a).

### III. Conclusion

For the reasons stated above, defendant's motions to dismiss are denied. Likewise, the motion to transfer pursuant to 28 U.S.C. § 1404(a) is also denied.

It is so ordered.