**STRATEGIC MARKETING & COMMUNICATIONS, INC., Plaintiff,**

**v.**

**KMART CORPORATION, Defendant.**

No. 98 CIV. 1367(RLC).

United States District Court, S.D. New York.

Oct. 19, 1998.

Berlack, Israels & Liberman LLP, for Plaintiff, New York City, NY, Carole L. Fern, John P. Biedermann, of Counsel.

Howard & Howard Attorneys PC, for Defendant, Bloomfield Hills, MI, Jon R. Steiger, Patrick M. McCarthy, of Counsel.

Eaton & Van Winkle, for Defendant, New York City, NY, Kathryn L. Bedke, Robert K. Gross, of Counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Defendant Kmart Corporation ("Kmart") moves to dismiss the complaint of plaintiff Strategic Marketing and Communications, Inc. ("SMC") pursuant to 28 U.S.C. § 1406(a), or in the alternative, to transfer this action from the Southern District of New York to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).

### I. Background

Plaintiff SMC is engaged in the business of selling pre-paid telephone cards. In late 1995, SMC's Vice–President, Scott Mullins ("Mullins"), identified Kmart Corporation as a potential purchaser of its cards. Mullins pursued Kmart through Leon Buck ("Buck"), a manufacturers representative familiar with Kmart's business practices. Buck made contact with Kmart buyer Joe Hofmeister ("Hofmeister"), who expressed interest in purchasing cards from SMC. Hofmeister provided Buck with a "New Vendor Packet" to pass along to SMC.

In his role as intermediary, Buck informed SMC that Kmart requires compa-

nies seeking vendor status to execute certain documents contained in the "New Vendor Packet," including a Purchase Order Terms and Conditions Agreement ("Purchase Order Agreement"). This Purchase Order Agreement states that its terms "shall apply to all purchase orders issued to Vendor by Kmart, whether by telephone, hard copy, electronically or otherwise ... Receipt of this confirmation is **required** before Vendor will be authorized to receive purchase orders from Kmart Corporation." (Defebaugh Aff. at 4) (emphasis in original). The President of SMC signed the Purchase Order Agreement and faxed a copy to Buck. Concerned that Kmart would not accept a faxed copy, Buck provided Vice President Mullins a separate original version of the agreement form, which Mullins signed.

Shortly thereafter, Mullins and Hofmeister began to negotiate directly with each other. In March, 1996, SMC and Kmart finalized an agreement ("1996 Agreement") whereby Kmart purchased phone cards from SMC and sold them at Kmart's retail outlets. SMC and Kmart renewed their contract with some alterations in March, 1997 ("1997 Agreement"). The companies continued to do business through the beginning of 1998, when their relationship terminated. SMC filed suit in June, 1998, alleging breach of contract and violation of various anti-trust laws.

Kmart now moves to dismiss or transfer this suit, claiming that SMC is bound by a forum selection clause in the Purchase Order Agreement. That clause reads as follows:

Michigan Contract and Jurisdiction. EACH ORDER, AND ALL OTHER ASPECTS OF THE BUSINESS RELATIONSHIP BETWEEN BUYER AND VENDOR, SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF MICHIGAN. VENDOR AGREES, WITH RESPECT TO ANY LITIGATION WHICH RELATES TO ANY ORDER OR WHICH OTHERWISE ARISES DIRECTLY OR IN–DIRECTLY OUT OF OR IN CONNECTION WITH SAID BUSINESS RELATIONSHIP OR ANY TRANSACTION OF ANY NATURE BETWEEN BUYER AND VENDOR, TO COMMENCE SAME: (1) EXCLUSIVELY IN (AND VENDOR HEREBY CONSENTS TO THE JURISDICTION OF) THE STATE OF MICHIGAN COURTS OF OAKLAND COUNTY, MICHIGAN OR THE UNITED STATES DISTRICT COURT IN DETROIT, MICHIGAN ...

(Defebaugh Aff. at 5).

## II. Discussion

■ It is now well-settled that parties may bargain in advance to select the forum in which their disputes will be adjudicated. *See M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 13, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 590–596, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *Design Strategy Corp. v. Nghiem,* 14 F.Supp.2d 298, 1998 U.S. Dist. LEXIS 1723 (S.D.N.Y. 1998) (Carter, J.). In the foundational *Bremen* decision, the United States Supreme Court examined a forum selection clause and found that "the choice of forum was made in an arms-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts." 407 U.S. at 12, 92 S.Ct. 1907. The resulting standard, followed by the Second Circuit, holds that a forum selection clause is enforceable unless it is shown that "enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." *Bense v. Interstate Battery System of America, Inc.,* 683 F.2d 718, 721–22 (2d Cir.1982) (quoting *Bremen,* 407 U.S. at 15, 92 S.Ct. 1907). Since *Bremen,* this Circuit has developed a strong policy of honoring forum selection clauses. *See Bense,* 683 F.2d at 721 ("general hostility towards forum se-

lection clauses is today simply a vestigial remainder of an outmoded doctrine"); *New Moon Shipping Co., Ltd. v. Man B & W Diesel Ag,* 121 F.3d 24, 29 (2d Cir.1997) ("burden [is] on the plaintiff, who brought suit in a forum other than the one designated by the forum selection clause, to make a 'strong showing' in order to overcome the presumption of enforceability").

■ SMC directs the court to the substantive law of Michigan, claiming that the venue law of the forum identified by the selection clause should control the enforceability of the clause itself. Precedent is clear, however, that in diversity cases such as this one, federal common law governs the enforcement of forum selection clauses. *See Design Strategy Corp.,* 14 F.Supp.2d at 300, 1998 U.S. Dist. LEXIS at *7–8; *see also Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (federal law governs a venue dispute in a diversity action involving a forum selection clause); *Jones v. Weibrecht,* 901 F.2d 17, 19 (2d Cir.1990) (questions of venue in diversity cases are essentially procedural, rather than substantive, in nature and subject to federal standards); *Bense v. Interstate Battery System of America, Inc.,* 683 F.2d 718, 722 (2d Cir.1982) (venue law of forum identified by selection clause governs in federal antitrust case).[1] Consistent with federal standards, then, the court must determine whether the forum selection clause is valid, and whether the clause should be enforced.

### A. Validity of Forum Selection Clause

■ SMC argues that the Purchase Order Agreement did not apply to its business with Kmart, and therefore the forum selection clause is not binding on the parties. SMC relies primarily on Kmart's initial answers to SMC's complaint, where Kmart averred that the 1997 Agreement between the parties "superseded, replaced and merged any and all previous agreements between Kmart and Strategic." Fern Aff. at Exs. 4, 13 (citing Kmart's Amended Answer to SMC's Complaint and Kmart's Answer to SMC's Verified Amended Complaint). Kmart subsequently amended its pleadings,[2] and now asserts that although the 1997 Agreement supersedes the 1996 Agreement, the prerequisite conditions of the Purchase Order Agreement remained in force throughout the parties' dealings. The statements in Kmart's early pleadings do not, contrary to SMC's insistence, constitute determinative judicial admissions which Kmart may never escape. It is certainly true that a fact-finder may take into account any inconsistencies that arise from a party's amended filings, and consider all of that party's statements accordingly. *See Andrews v. Metro North Commuter R.R. Co.,* 882 F.2d 705, 707 (2d Cir.1989) ("A party ... cannot advance one version of the facts in his pleadings, conclude that his interests would be better served by a different version, and amend his pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories.") (citation omitted). However, as the Second Circuit long ago made clear, a party that amends its pleadings is no longer categorically bound to its initial statements:

---

**1.** SMC's citations to *Daisey Industries, Inc. v. K–Mart Corp.,* 1997 U.S. Dist. LEXIS 16135 (S.D.N.Y. Oct. 15, 1997), and *One Step Up v. Kmart Corp.,* 1997 U.S. Dist. LEXIS 9897 (S.D.N.Y. July 10, 1997), are inapposite. In those cases, the courts found that the Purchase Order Agreements had never been executed, and applied state law relating to the Uniform Commercial Code to determine that the Agreements were material alterations to oral contracts. The instant case presents no such circumstance.

**2.** This court granted Kmart leave to amend per order of September 22, 1998, after first declaring Kmart's attempt to submit a revised answer without the court's permission to be a nullity. Although Kmart's motion for leave to amend was pending at the time that the parties submitted their briefs on the instant motion, both parties included arguments for the court to consider in the event that Kmart received leave to amend.

when a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated, though controvertible, like any other extrajudicial admission made by a party or his agent.

*Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter*, 32 F.2d 195, 198 (2d Cir.1929) (citations omitted).

Kmart explains that its original pleadings were never intended to refer to the Purchase Order Agreement, which Kmart had not yet located in its records, but only to the 1996 Agreement. Kmart changed its answer once it found the two versions of the Purchase Order Agreement signed by SMC officers and could present them to the court. Given this explanation and Kmart's Amended Answer to SMC's Amended Verified Complaint, SMC can not deny the existence of a valid forum selection clause simply by citing Kmart's early averments.

SMC also argues that the court should exclude the Purchase Order Agreement because Kmart never signed it. Again SMC relies on Kmart's pleadings, pointing to Kmart's statement (included even in its most recent answer) that anything other than the express terms of contracts "mutually executed by Strategic and Kmart" is barred by the statute of frauds. Plaintiff's Brief at 16 (quoting Kmart's First Amended Answer to SMC's Verified Amended Complaint, ¶ 144). It is well established, however, that in a sale of goods the statute of frauds requires only the signature of the party against whom enforcement is sought. *See, e.g.,* N.Y. UCC LAW § 2–201 (McKinney 1993); MICH. COMP. LAWS ANN. § 440.2201(1) (1994). SMC's officers signed the Purchase Order Agreement, assenting to its terms and executing it for the purpose of the statute of frauds. Kmart's pleadings do not, therefore, exclude the Purchase Order Agreement from consideration, and the court

finds that the forum selection clause is valid. The appropriate inquiry then becomes whether the forum selection clause should be enforced.

### B. Enforcement of Forum Selection Clause

SMC argues that the forum selection clause is unenforceable because the parties did not directly negotiate the conditions of the Purchase Order Agreement. In SMC's view, the court should only consider the terms included in the 1996 and 1997 Agreements, which the parties discussed in detail. SMC further contends that the forum selection clause is overly favorable to Kmart, indicating that the clause is the result of Kmart's overreaching and unfair bargaining power.

A forum selection clause can bind contracting parties even when the contract in question is a form contract and not subject to negotiation. *See Carnival Cruise*, 499 U.S. at 593, 111 S.Ct. 1522 (enforcing a forum selection clause written on the backs of passenger ship tickets, despite the passengers' objection that they had not been able to bargain over the tickets' conditions); *Design Strategy Corp.*, 14 F.Supp.2d at 301, 1998 U.S. Dist. LEXIS, at * 9 (refusing to set aside a forum selection clause contained in a standard employment contract). By signing the Purchase Order Form, SMC's officers accepted the prerequisites of doing business with Kmart, and SMC's complaint that it did not fully negotiate these conditions is unavailing. "The forum selection clause was part of the bargain into which [SMC] freely entered," *Bense*, 683 F.2d at 722, and SMC can not now escape its terms.

Finally, SMC argues that the if the court enforces the forum selection clause, it may do so only through Kmart's § 1404(a) transfer motion, and not through the § 1406(a) motion to dismiss which Kmart added to its Amended Answer to

SMC's Verified Amended Complaint.[3] SMC argues that Kmart waived its right to move for dismissal because it only cited § 1404(a) in its initial filings.[4]

With this argument, SMC attempts not only to avoid dismissal, but also to profit from the treatment that forum selection clauses receive in the § 1404(a) context. As the United States Supreme Court explained in *Stewart*, a forum selection clause is a "significant factor that figures centrally in the district court's [§ 1404(a)] calculus," 487 U.S. at 29, 108 S.Ct. 2239, but it is only one relevant factor. "The district court must also weigh in balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Id.* at 30, 108 S.Ct. 2239. This additional balancing distinguishes § 1404(a) from motions to dismiss; under *Bremen*, inconvenience alone is not sufficient grounds to avoid the application of a forum selection clause, unless the party seeking to avoid the clause can show that "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *New Moon Shipping*, 121 F.3d at 32 (quoting *Bremen* 407 U.S. at 18, 92 S.Ct. 1907); *see also Composite Holdings v. Westinghouse Elec. Corp.*, 992 F.Supp. 367, 370 (S.D.N.Y.1998) (Kaplan, J.) (noting different weight given to forum selection clauses in standards for dismissal and § 1404(a)).

■■■ SMC argues that multiple factors common to § 1404(a) analysis—plain-

tiff's choice of forum, convenience of witnesses, convenience of the parties, and the location of events giving rise to the litigation—compel disregard of the forum selection clause. SMC points out that in a typical § 1404 inquiry, courts will not disturb a plaintiff's choice of forum absent a showing that the balance of convenience weighs heavily in favor of transfer. However, SMC relies exclusively on cases not involving forum selection clauses, or cases involving permissive clauses worded to indicate that the parties consent to a particular venue. When a § 1404(a) motion involves a forum selection clause and the language of the clause is mandatory, rather than permissive, deference to the plaintiff's choice of forum is inappropriate. *See Weiss v. Columbia Pictures Television, Inc.*, 801 F.Supp. 1276, 1278 (S.D.N.Y. 1992) (Leisure, J.); *Stonehenge, Ltd. v. Garcia*, 989 F.Supp. 539, 542 (S.D.N.Y. 1998) (Scheindlin, J.); *see also Orix Credit Alliance, Inc. v. Mid–South Materials Corp.*, 816 F.Supp. 230, 233 (S.D.N.Y.1993) (Sweet, J.) (describing greater weight to be given mandatory forum selection clauses). The forum selection clause in the Purchase Order Form is clearly mandatory; it states that SMC agrees to commence any litigation "exclusively" in Michigan. (Defebaugh Aff. at 5). Once a mandatory choice of forum clause is deemed valid, the burden shifts to the plaintiff to demonstrate exceptional facts explaining why he should be relieved from his contractual duty. *See Weiss*, 801 F.Supp. at 1278.

---

**3.** 28 U.S.C. § 1406(a) states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to a district or division in which it could have been brought."

28 U.S.C. § 1404(a) states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

**4.** SMC also claims that Kmart is precluded from contesting venue at all because it included a counterclaim in its answer. Kmart's counterclaim is compulsory, however, and does not constitute waiver of its venue objection. *See Medicenters of America, Inc. v. T & V Realty & Equipment, Corp.*, 371 F.Supp. 1180 (E.D.Va 1974); *see also Matter of Arbitration Between InterCarbon Bermuda, Ltd. and Caltex Trading & Transport Corp.*, 146 F.R.D. 64 (S.D.N.Y.1993) (Lowe, J.) (compulsory counterclaims do not waive jurisdictional defense).

None of the remaining § 1404(a) factors help SMC meet this burden. The great majority of potential witnesses listed in SMC's affidavit, many of them Kmart employees, live outside of New York in states such as Michigan, Virginia, Massachusetts, Texas, New Jersey, and Illinois. The convenience of the witnesses, then, does not militate for New York, since most witnesses appear not to be within the court's subpoena power, and are no more likely to appear in New York than in Michigan; moreover, SMC has failed to demonstrate why the presentation of the testimony of any of these witnesses by deposition would be inadequate. *See Weiss*, 801 F.Supp. at 1279. Although SMC protests that it would be burdened financially by litigating in Michigan, mere inconvenience and expense of traveling are not themselves adequate reasons to disturb the parties' contractual choice of forum. *Id.*; *Bense*, 683 F.2d at 722. The events giving rise to the litigation, including the parties' contractual negotiations, took place in Michigan as well as New York, and do not strongly favor either fora. SMC has not shown why it should escape its contractual duty, and thus even according to § 1404(a) analysis, the forum selection clause should be enforced.

In the court's view, the most appropriate way to enforce the forum selection clause is to transfer this action to the forum designated by the parties' contract. The court need not decide whether Kmart has waived its § 1406(a) motion. Even if § 1406(a) were available, the court would exercise its option to transfer in the interests of justice, and § 1404(a) is a more appropriate vehicle for that remedy. *See Maltz v. Union Carbide Chemicals & Plastics Co., Inc.*, 992 F.Supp. 286, 295–96 (S.D.N.Y.1998) (transfers made in accordance with forum selection clauses are consistently construed as falling under the rubric of § 1404(a)) (Wood, J.) (collecting cases).

### III. Conclusion

For the reasons stated above, the motion of defendant Kmart Corporation to transfer this action to the Eastern District of Michigan pursuant to § 1404(a) is hereby granted.

IT IS SO ORDERED.